1
2
3
4                    UNITED STATES DISTRICT COURT
5                  NORTHERN DISTRICT OF CALIFORNIA
6
7    JAMES JOSEPH,                          Case No. 21-cv-06745-WHO (PR)
                       Petitioner,
8                                            **ORDER DENYING PETITION FOR
9          v.                                WRIT OF HABEAS CORPUS**
10   RICK HILL,                              Re: Dkt. No. 20
                       Respondent.
11
12
13                            **INTRODUCTION**
14         Petitioner James Joseph seeks federal habeas relief from his California state
15   convictions for human trafficking, rape, sodomy and other crimes.  None of his claims for
16   habeas relief has merit.  His conviction for conspiracy to commit human trafficking did not
17   violate the Ex Post Facto Clause because the conspiracy straddled the effective date of the
18   statute; the trial court's denial of his motion to dismiss was valid because Contra Costa
19   County was a proper venue; trial counsel was not ineffective in not filing the motion to
20   dismiss before trial; and certain charges were not barred by the statute of limitations.  His
21   petition for habeas relief is DENIED.  And his motion to stay proceedings and for an order
22   directing New York and California courts to produce voluminous court records is also
23   DENIED.
24                            **BACKGROUND**
25         In 2017, Joseph was convicted by a Contra Costa County Superior Court jury of
26   conspiracy to commit human trafficking, human trafficking with the intent to pimp or
27   pander, fourteen counts of rape, two counts of sodomy, and forcible oral copulation.
28

United States District Court
Northern District of California

1    (Ans., State Appellate Opinion, Dkt. No. 15-21 at 3, 7.)[1]  The jury also found true an

2    allegation he committed forcible sex acts against multiple victims.  (*Id.*)  A sentence of 159

3    years, plus fifteen years to life, in state prison was imposed.  (*Id.* at 7.)

4         On appeal, the state appellate court reversed five of the rape convictions for lack of

5    territorial jurisdiction, ordered that the judgment be modified to reflect a sentence of 119

6    years plus fifteen years to life, and otherwise affirmed the trial court judgment.  (*Id.* at 21.)

7         Joseph's other attempts to overturn his state convictions in state court were

8    unsuccessful.  This federal habeas petition followed.

9         The state appellate court summarized the facts as follows:

10                      Overview of Prosecution Evidence

11

12   1.  Jane Doe 1 (Counts 1 and 5-11)

13   In March 2001, a woman approached Doe 1 at a shopping mall in Monterey
     and asked whether Doe 1 would be interested in traveling and doing makeup.
14   Doe 1 took the woman's business card.  Later, Doe 1 interviewed for the
     position and 'got the job.'  She met the woman at a restaurant to fill out
15   employment paperwork.  At the meeting, Doe 1 'felt like something was
     wrong,' so she left.
16

17   As Doe 1 approached her car, Joseph drove up next to her.  Another man
     'forcefully' pulled Doe 1 into the car.  Joseph drove to a house in Livermore,
18   where he and his companion carried Doe 1 inside and took off her clothes.
     Then Joseph held Doe 1 down, and raped and sodomized her.  Joseph locked
19   Doe 1 in a bedroom.
20

21   A short time later, Joseph introduced Doe 1 to Lavassani, his most senior
     prostitute.  Lavassani told Doe 1 she would be having sex with men for
22   money, and that Joseph would be her pimp.  Then Joseph took Doe to her
     first appointment.  On the way there, Joseph forced Doe to orally copulate
23   him.  After the appointment, Doe 1 gave the money to Joseph and begged to
     go home.  He refused.  Doe 1 lived in the Livermore house with several other
24   prostitutes.[2]
25

26   _____

     [1] *People v. Joseph*, 63 Cal. App. 5th 1058, 1062 (Cal. Ct. App. May 3, 2021).
27
     [2] "Additional prostitutes lived at Joseph's houses in Tracy and Manteca.  Joseph lived in
28   various places, including Livermore, Danville, and San Ramon."  (Ans., State Appellate
     Opinion, Dkt. No. 15-21 at 4 n.2.)

United States District Court
Northern District of California

Joseph forced Doe 1 to prostitute herself throughout the Bay Area. Doe 1 had prostitution appointments in Walnut Creek, and she was driven through Walnut Creek on her way to other appointments. Doe 1 also traveled to other states for the purpose of prostitution. Joseph assaulted Doe 1 and raped her at least 10 times. He controlled every aspect of Doe 1's life through a regime of violence and fear until March 2002, when Doe 1 was taken into police custody.

2. <u>Jane Doe 2 (Counts 1 and 12-14)</u>

In late 2001, Doe 2 met with Joseph at a nightclub in San Francisco, where he promised her a 'modeling contract' and a 'great life.' Then Joseph took Doe 2 to a hotel in the East Bay to discuss 'modeling.' Doe 2 asked to leave, but Joseph refused. He made Doe 2 undress and forced her to orally copulate him. Joseph also raped Doe 2. Shortly thereafter, Doe 2 moved into Joseph's house in Tracy, where he raped her several times. Later, Doe 2 moved to Joseph's house in Livermore.

Joseph forced Doe 2 to prostitute herself. Like Doe 1, Doe 2 was taken to prostitution appointments all over the Bay Area. Later, Joseph forced Doe 2 to prostitute herself in New York, Washington D.C., and Miami. In 2002, Doe 2 was taken into police custody in New York.

3. <u>Jane Does 3 and 4 (Counts 1 and 15-16)</u>

In late 2001 or early 2002, Joseph approached Doe 3 at a mall in Pleasanton and offered to provide her with modeling opportunities where she would travel and make money. It sounded exciting, so Doe 3 agreed. Shortly thereafter, Doe 3 moved into Joseph's house in Manteca or Tracy, where at least one of Joseph's prostitutes lived. Later, the plan 'changed,' and Joseph told Doe 3 she would move to Georgia to model and 'go on dates' with men. As Joseph drove Doe 3 from California to Georgia, they got into an argument. Joseph pulled the car over and raped Doe 3 'on the hood of the car.'

When Joseph and Doe 3 arrived in Atlanta, they checked into a hotel where Joseph sodomized Doe 3. With Doe 3's encouragement, Doe 4 moved to Atlanta. Joseph raped Does 3 and 4 in Atlanta. Joseph prepared Doe 3 and Doe 4 to prostitute themselves but Doe 3 escaped and returned to California before she had to go on a prostitution appointment.

4. <u>Jane Doe 5 (Counts 1, 2, and 17-21)</u>

In 2013, Joseph approached Jane Doe 5 at a restaurant in Alabama and asked her if she 'wanted to model.' Doe 5 agreed. Joseph took Doe 5 back to his

hotel, where he told Doe 5 that she would start her modeling career by 'sleeping with men' for money.  Joseph acknowledged what Doe 5 would be doing was illegal, but assured her she would be 'safe.'  He also claimed his prostitution operation was like a 'family.'  Doe 5 quit her job and put her belongings in storage.

Joseph drove Doe 5 to North Carolina.  In North Carolina, Joseph raped Doe 5 several times.  Doe 5 started working as a prostitute in June 2014.  She worked in North Carolina and New York.  Doe visited California a 'couple times on holidays.'  In February 2015, she obtained a California driver's license.  Three months later, Doe 5 traveled to San Francisco for breast augmentation surgery.  Doe had the surgery to improve her chances of landing a modeling contract.  Doe 5 spent two weeks in California recovering from the surgery.  Then she returned to New York, where she was later taken into police custody.

5.  Police Investigation

Police arrested Joseph at his home in Danville in August 2015.  During the investigation, police found condoms, lubricant, and emergency contraceptive medication.  They also found large amounts of cash, expensive cars, jewelry, and designer clothes and accessories.  Police also recovered Doe 5's birth certificate and her passport.  Police obtained text messages from Joseph and Lavassani's cell phones discussing the human trafficking operation.

(Ans., State Appellate Opinion, Dkt. No. 15-21 at 4-6.)

The trial was held in Contra Costa County, which Joseph contends was an improper venue.  Joseph was arrested in August 2015 at his residence in Danville, which lies within the county.  (*Id.* at 6.)  From that residence, police took the evidence of conspiracy and human trafficking listed above.  The grand jury concluded under state law that Contra Costa County had jurisdiction, the prosecutor filed the indictment in that county in April 2016, and Joseph did not object to the venue until July 2017, which was three weeks after trial had started.  (Ans., Clerk's Transcript, Dkt. No. 14-1 at 27, 28; Dkt. No. 14-4 at 168.)

As grounds for federal habeas relief, Joseph claims that (i) his conviction under Count 1 violated the Ex Post Facto Clause; (ii) the trial court violated his right to a fair trial by denying a defense motion to dismiss for improper venue; (iii) defense counsel rendered ineffective assistance by failing to file the improper venue motion before trial; and (iv) the convictions on Counts 3 through 16 should be set aside because they are barred by the

4

1    statute of limitations.

2                              **STANDARD OF REVIEW**

3          Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), this

4    Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

5    pursuant to the judgment of a State court only on the ground that he is in custody in

6    violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

7    The petition may not be granted with respect to any claim that was adjudicated on the

8    merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a

9    decision that was contrary to, or involved an unreasonable application of, clearly

10   established Federal law, as determined by the Supreme Court of the United States; or

11   (2) resulted in a decision that was based on an unreasonable determination of the facts in

12   light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

13         "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

14   court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question

15   of law or if the state court decides a case differently than [the] Court has on a set of

16   materially indistinguishable facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13

17   (2000).

18         "Under the 'unreasonable application' clause, a federal habeas court may grant the

19   writ if the state court identifies the correct governing legal principle from [the] Court's

20   decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at

21   413.  "[A] federal habeas court may not issue the writ simply because that court concludes

22   in its independent judgment that the relevant state court decision applied clearly

23   established federal law erroneously or incorrectly.  Rather, that application must also be

24   unreasonable."  *Id.* at 411.  A federal habeas court making the "unreasonable application"

25   inquiry should ask whether the state court's application of clearly established federal law

26   was "objectively unreasonable."  *Id.* at 409.

27

28

**DISCUSSION**

**i.    Ex Post Facto Claim**

Joseph claims his conviction for conspiracy to commit human trafficking (Cal. Penal Code § 236.1) is invalid because it violates the Ex Post Facto Clause. (Am. Pet., Dkt. No. 6 at 7, 17-25.) He asserts that the agreement to commit human trafficking, and many of the overt acts taken in furtherance of the conspiracy, took place before 2006, when section 236.1 made human trafficking illegal. (*Id.*; Dkt. No. 6-1 at 9.) "The first 27 overt acts were alleged to have occurred in 2001 and 2002, and the remaining seven overt acts were alleged to have occurred in 2014. However, section 236.1 did not take effect until January 1, 2006, thereby giving rise to this ex post facto argument." (*Id.*)

The facts underlying this claim were summarized by the state appellate court:

> Count 1 charged Joseph with conspiracy to commit human trafficking and alleged overt acts occurring between 2001 and 2015: overt acts 1 through 27 occurred in 2001 and 2002; acts 28 through 34 occurred in 2014 and 2015. Before trial, Joseph moved to dismiss count 1 pursuant to section 995. He argued the charge violated the ex post facto prohibition because the conspiracy as to overt acts 1 through 27 was completed before human trafficking became a crime in 2006. The prosecution disagreed, contending there was no ex post facto violation because the charge alleged 'a continuing course of conduct that straddle[d]' enactment of section 236.1. The court denied the motion and the jury convicted Joseph of count 1.

(Ans., State Appellate Opinion, Dkt. No. 15-21 at 7-8.) The state appellate court concluded that "Overt act 34, which involved Doe 5, occurred in California after the passage of section 236.1, which satisfies the requirement that an overt act be done in this state 'to effect the object' of the conspiracy."[3] (*Id.* at 11 n.4.)

The state appellate court rejected Joseph's ex post facto claim "because the conspiracy straddled the effective date of the statute":

> it began before section 236.1's effective date and continued well after that date. [Citations omitted.] Our conclusion is supported by numerous cases

---

[3] "While the jury was properly instructed that it must find at 'least one of the overt acts was committed in California,' it did not make a specific finding regarding that act, although it convicted Joseph of count 2, which encompassed Doe 5's claims for the same 2014-2015 time period." (Ans., State Appellate Opinion, Dkt. No. 15-21 at 11 n.4.)

holding there is no ex post facto violation where the conspiracy continues after the effective date of the statute.  [Citations omitted.]

Joseph asserts '[i]t violated the ex post facto provisions to allow the jury to find *an agreement* to violate section 236.1' before that statute took effect.  (Italics added.)   Joseph's focus on the 'inception' of the 'agreement' is unavailing.  Joseph and Lavassani's plan may have originated before section 236.1 criminalized human trafficking, but that plan was 'converted to membership in an unlawful conspiracy' when section 236.1 took effect. (*U.S. v. Kubacki* (E.D. Pa. 1965) 237 F.Supp. 638, 642-643.)   And that conspiracy continued well after the effective date of the statute:   the prosecution offered evidence that Joseph committed human trafficking after the enactment of section 236.1 and Joseph did not establish he withdrew from the conspiracy at any point.

(Ans., State Appellate Opinion, Dkt. No. 15-21 at 10-11.)

The Constitution prohibits the federal government and the states from passing any "ex post facto Law."  U.S. Const. Art. I, § 9, cl. 3.  The Ex Post Facto Clause prohibits the government from enacting laws that (1) makes an act done before the passing of the law, which was innocent when done, criminal;[4] (2) aggravates a crime or makes it greater than it was when it was committed; (3) changes the punishment and inflicts a greater punishment for the crime than the punishment authorized by law when the crime was committed; or (4) alters the legal rules of evidence and requires less or different testimony to convict the defendant than was required at the time the crime was committed.  *Stogner v. California*, 539 U.S. 607, 611-612 (2003).  Under both federal and state law, conspiracy is a continuing crime.  "It is well established that a statute increasing a penalty with respect to a criminal conspiracy which commenced prior to, but was continued beyond the effective date of the statute, is not ex post facto as to that crime."  *United States v. Campanale*, 518 F.2d 352, 365 (9th Cir. 1975).

"The ex post facto prohibition does not encompass 'continuing' or 'straddle' offenses, which begin before the statute takes effect and are completed after it."  (Ans.,

---

[4] An alternative description of this category is any law that "'inflict[s] punishments, where the party was not, by law, liable to any punishment.'"  *Stogner*, 539 U.S. at 611-12 (quoting *Calder v. Bull*, 3 Dall. 386, 389 (1798)).

State Appellate Opinion, Dkt. No. 15-21 at 9) (citation removed). "Because 'ex post facto' means 'after the fact' not 'during the fact,' it does not encompass offenses for which the defendant is prosecuted or punished based on acts continuing beyond a change in the law." (*Id.* at 10) (citation removed).

Habeas relief on this claim is not warranted because the state appellate court reasonably determined that no ex post facto violation occurred. Though the conspiracy agreement may have existed before the effective date of section 236.1, at least one overt act furthering the conspiracy agreement occurred after the effective date. At that point, "the association becomes an active force" and "it is the agreement, not the overt act, which is punishable." *People v. Johnson*, 57 Cal. 4th 250, 259 (Cal. 2013) (state citations omitted).

Joseph's contentions in his traverse are meritless. He disputes the sufficiency of evidence of conspiracy, but it was an ex post facto claim that was exhausted in the state courts and is at issue here. Furthermore, if confronted by a record that supports conflicting inferences, a federal habeas court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson v. Virginia*, 443 U.S. at 307, 326 (1979). In addition, his allegations in the traverse, both legal and factual, were not presented in the petition and therefore cannot be considered. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994).

The state court's rejection of this claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

### ii.   Denial of Motion to Dismiss for Improper Venue

Joseph claims that the trial court violated his due process rights when it denied his motion to dismiss under California Penal Code § 1118.1 charges related to Jane Does 1, 2, and 3 for improper venue. (Am. Pet., Dkt. No. 6 at 8, 26-30.) "After the prosecution rested, Joseph moved for acquittal on several charges pursuant to section 1118.1. He argued venue was improper under state law because the crimes occurred outside of Contra

1    Costa County." (Ans., State Appellate Opinion, Dkt. No. 15-21 at 12.) The prosecutor

2    contended that venue was proper under state law, which "expands venue to places where

3    preparatory acts 'requisite to the consummation of the offense' have been committed."

4    (*Id.*) He explained that there were "multiple incidents, trips through, and engagements in

5    Contra Costa County" and "situs points of the conspiracy" were in San Ramon in Danville.

6    (*Id.*) The trial court "granted the motion as to two counts denied the motion as to the

7    remaining counts." (*Id.*)

8           The state appellate court rejected Joseph's claim as forfeited because he failed to

9    raise it before trial. (*Id.* at 13-14.) The court also found that Joseph's "precise argument is

10   somewhat opaque": he failed to identify which claims should be dismissed until the final

11   sentence of his appellate brief; he claimed without citing to the record that venue was

12   improper as to unspecified claims; and he did not discuss relevant state law, "the burdens

13   of the parties in the trial court, or the applicable standard of appellate review." (*Id.* at 10-

14   11.) The state appellate court also concluded that "Overt act 34, which involved Doe 5,

15   occurred in California after the passage of section 236.1, which satisfies the requirement

16   that an overt act be done in this state 'to effect the object' of the conspiracy."[5] (*Id.* at 11

17   n.4.)

18          Joseph's contentions in his petition rely solely on state law and its alleged

19   misapplication. His trial counsel cited only to state law in his motion to dismiss, (Ans.,

20   Clerk's Transcript, Dkt. No. 14-4 at 177-83).

21          Joseph's claim, which is based entirely on state law, cannot succeed. Habeas relief

22   is not available for violations of state law, even if state law were erroneously interpreted or

23   applied. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). And the state appellate

24   court's decision that state law was correctly applied binds this federal habeas court.

25   *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

26

27   _____

     [5] "While the jury was properly instructed that it must find at 'least one of the overt acts
28   was committed in California,' it did not make a specific finding regarding that act,
     although it convicted Joseph of count 2, which encompassed Doe 5's claims for the same
     2014-2015 time period." (Ans., State Appellate Opinion, Dkt. No. 15-21 at 11 n.4.)

Even if Joseph had raised a federal claim, no relief would be available.  The Vicinage Clause of the Sixth Amendment guarantees a person accused of a crime "the right to a . . . jury of the State and district wherein the crime shall have been committed, which district shall have previously been ascertained by law."  U.S. Const. amend. VI. However, the United States Supreme Court has not yet decided whether the Vicinage Clause applies to the states.  *Stevenson v. Lewis*, 384 F.3d 1069, 1071-72 (9th Cir. 2004) The means that a state prisoner's rights under the Vicinage Clause are not clearly established law under AEDPA, which forecloses any possibility of habeas relief on this claim.  The state court's rejection of Joseph's improper venue claim therefore was reasonable and is entitled to AEDPA deference.  This claim is DENIED.

### iii.    Claim of Ineffective Assistance

Joseph claims trial counsel rendered ineffective assistance by failing to file a improper venue motion before trial.  (Am. Pet., Dkt. No. 6 at 4, 33.)  The state appellate court determined that Joseph had not shown a deficient performance because "trial counsel may have concluded venue in Contra Costa County was proper" or have preferred the county for "strategic reasons."  (Ans., State Appellate Opinion, Dkt. No. 15-21 at 14-15.) Also, there was no prejudice.  (*Id.* at 15.)  Joseph did not show that the venue "inconvenienced him or impaired his ability to mount a defense."  (*Id.*)  Nor did he offer any support for his "speculative claim" that charges would not have been raised against him in Alameda County.  (*Id.*)

To prevail on a claim of ineffectiveness of counsel, a petitioner must establish that (1) counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984), and (2) he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.  When the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt

respecting guilt." *Id.* at 695. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (citing *Strickland*, 466 U.S. at 693).

The standards of 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential . . . and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation marks and citations omitted). "The question [under § 2254(d) ] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The state appellate court reasonably determined that there was no deficient performance. Counsel could have decided for strategic reasons that venue was proper, owing to the fact that Joseph resided in Contra Costa County when arrested and evidence of human trafficking was found at that residence. Based on this information, counsel may have felt that any motion to change venue would have been denied. It is both reasonable and not prejudicial for defense counsel to forgo a meritless objection. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005). The state appellate court also reasonably determined that there was no prejudice. Joseph has not shown that he was inconvenienced by the chosen venue or that he could not mount a defense because of where the trial occurred.

The state court's rejection of Joseph's ineffective assistance claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

**iv.     Statute of Limitations**

Joseph claims Counts 5 through 16 (the charges of rape, sodomy, and forcible oral copulation against Does 1, 2, and 3) are barred by California's statute of limitations as the acts occurred in 2001 and 2002.[6] (Am. Pet., Dkt. No. 6 at 7, 34-39.) The state appellate court rejected this claim: "Here, the jury convicted Joseph of the sex offenses and found the multiple victim allegation true, which rendered the offenses punishable by

---

[6] Joseph also lists counts 3 and 4 but because he was acquitted of those counts they are not relevant here. (Ans., State Appellate Opinion, Dkt. No. 15-21 at 7.)

imprisonment for 15 years to life . . . [which under state law allows] these offenses" to be "prosecuted at any time." (Ans., State Appellate Court, Dkt. No. 15-21 at 21.)

Joseph's claim is based on state law and therefore cannot succeed. Violations of state law are not remediable on federal habeas review, even if state law were erroneously interpreted or applied. *Swarthout*, 562 U.S. at 219; *Gadlin v. Cate*, No. CV 10-4851-PA (DFM), 2014 WL 3734618, at *14 (C.D. Cal. July 25, 2014) ("A state court's failure to properly apply a state statute of limitations does not violate due process or any other provision of the Constitution or a federal statute.") And the state appellate court's determination that state law was correctly applied forecloses any possibility of federal habeas relief. *Bradshaw*, 546 U.S. at 76.

The state court's rejection of this claim was reasonable and is entitled to AEDPA deference. This claim is DENIED.

### MOTION TO STAY

Joseph moves to stay federal habeas proceedings so that he can "fully exhaust newly discovered evidence in support of his actual innocence claims." (Dkt. No. 23 at 1.) He asks to stay proceedings and for an order "directing both the district courts of the state of New York, Manhattan district, and the state of California, Contra Costa County" to produce a large number of court transcripts and other records. (*Id.* at 1-5.) His allegations are almost wholly conclusory. The only specific facts he gives that might support his claim are those related to an incident in which Doe 3 was stopped by the Texas State Highway Patrol in 2002. (*Id.* at 5.) He alleges that during the hour-long interview with Texas authorities, Doe 3 "clearly stated on the records requested that she was under no duress, that she was safe and that she was in fact traveling of her own free will with Petitioner to Atlanta, Ga. Juxtapose to, the 13 years later false allegations that led to Petitioner's false conviction of counts 15-16 concerning her." (*Id.*)

A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course. *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997). However, Rule 6(a) of the Federal Rules Governing Section 2254 Cases, provides that a

"judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  Before deciding whether a petitioner is entitled to discovery under Rule 6(a) the court must first identify the essential elements of the underlying claim.  *Bracy*, 520 U.S. at 904.  The court must then determine whether the petitioner has shown "good cause" for appropriate discovery to prove his claim.  *Id.*  Good cause for discovery under Rule 6(a) is shown "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'"  *Id.* at 908-09 (citation omitted).

To make a credible showing of actual innocence, a petitioner must support "his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial."  *Lee v. Lampert*, 653 F.3d 929, 931 (9th Cir. 2011) (en banc).  Then a petitioner must show that in light of the new evidence it is more likely than not that "no reasonable juror would have convicted him," *id.* at 327, or that "every juror would have voted to acquit him," *Lee*, 653 F.3d at 946 (citing *Schlup v. Delo*, 513 U.S. at 298, 327 (1995) (Kozinski, J. concurring).

Joseph's motion is DENIED because he fails to show good cause or make a credible showing of actual innocence.  A single incident in which one victim said that she was not under duress is not sufficient to support a claim of actual innocence, especially considering the seriousness and numerosity of his convictions, and the ample evidence that supports them.  There is no reason to stay these federal habeas proceedings and order such discovery.  The motion is DENIED.

## CONCLUSION

The state court's adjudication of Joseph's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, the

13

1  petition is DENIED.

2      A certificate of appealability will not issue.  Reasonable jurists would not "find the

3  district court's assessment of the constitutional claims debatable or wrong."  *Slack v.*

4  *McDaniel*, 529 U.S. 473, 484 (2000).  Joseph may seek a certificate of appealability from

5  the Ninth Circuit Court of Appeals.

6      Joseph's motion to stay proceedings is DENIED.  (Dkt. No. 23.)

7      The Clerk shall terminate all pending motions, enter judgment in favor of

8  respondent, and close the file.

9      **IT IS SO ORDERED.**

10  **Dated:**  August 21, 2023



WILLIAM H. ORRICK
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California